## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER LEAMAN, | Civil Action No. |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| NANTKWEST, INC., PATRICK SOON-SHIONG, BARRY J. SIMON, JOHN C. THOMAS, JR., FRED DRISCOLL, MICHAEL BLASZYK, and CHERYL COHEN, | **<u>JURY TRIAL DEMANDED</u>** |
| Defendants. | |

Plaintiff Christopher Leaman ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by NantKwest, Inc. ("NantKwest" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning NantKwest and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against NantKwest and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with ImmunityBio, Inc. ("ImmunityBio") (the "Proposed Transaction").

2.      On December 21, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with ImmunityBio.  Pursuant to the terms of the Merger Agreement all of the outstanding shares of ImmunityBio common stock will be converted into the right to receive shares of NantKwest common stock.

3.      On February 2, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against NantKwest and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to NantKwest shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, the owner of NantKwest shares.

9.      Defendant NantKwest is incorporated under the laws of Delaware and has its principal executive offices located at 3530 John Hopkins Court, San Diego, California 92121. The Company's common stock trades on the NASDAQ under the symbol "NK."

10.     Defendant Patrick Soon-Shiong ("Soon-Shiong") is and has been the Chairman of the Board of NantKwest at all times during the relevant time period.

11.     Defendant Barry J. Simon ("Simon") is and has been the President, Chief Administrative Officer, and a director of NantKwest at all times during the relevant time period.

12.     Defendant John C. Thomas, Jr. ("Thomas") is and has been a director of NantKwest at all times during the relevant time period.

13.     Defendant Fred Driscoll ("Driscoll") is and has been a director of NantKwest at all times during the relevant time period.

14.     Defendant Michael Blaszyk ("Blaszyk") is and has been a director of NantKwest at all times during the relevant time period.

15.     Defendant Cheryl Cohen ("Cohen") is and has been a director of NantKwest at all times during the relevant time period.

16.     Defendants Soon-Shiong, Simon, Thomas, Driscoll, Blaszyk, and Cohen are collectively referred to herein as the "Individual Defendants."

17.     The Individual Defendants, along with Defendant NantKwest, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

18.     NantKwest is an innovative, clinical-stage, immunotherapy company focused on harnessing the power of the innate immune system to treat cancer and infectious diseases. NantKwest is the leading producer of clinical dose forms of off-the-shelf natural killer (NK) cell therapies. The activated NK cell platform is designed to destroy cancer and virally-infected cells. The safety of these optimized, activated NK cells—as well as their activity against a broad range of cancers—has been tested in phase I clinical trials in Canada and Europe, as well as in multiple phase I and II clinical trials in the United States

**The Company Announces the Proposed Transaction**

19.     On December 21, 2020, the Company jointly issued a press release announcing

the Proposed Transaction.  The press release stated in part:

CULVER CITY, Calif. & EL SEGUNDO, Calif.--(BUSINESS WIRE)--
ImmunityBio, a privately-held immunotherapy company, and NantKwest, Inc.
(NASDAQ: NK), a clinical-stage, natural killer cell-based therapeutics company,
today announced they have entered into an agreement to merge in a stock-for-
stock transaction. The combination will create a leading immunotherapy and cell
therapy company focused on oncology and infectious disease.

Together, ImmunityBio and NantKwest will have a broad, clinical-stage pipeline
– including 13 assets in clinical trials and 11 in Phase II to III – as well as a robust
early stage pipeline to address other difficult to treat cancers. The combination of
NantKwest's Natural Killer (NK) cell platform and ImmunityBio's
immunotherapy fusion protein, immunomodulator, and adenovirus platforms have
already resulted in complete responses in late stage, difficult to treat metastatic
cancers. To date complete responses have been noted in patients with second line
or greater metastatic pancreatic cancer, triple-negative breast cancer, head and
neck cancer, and Merkel Cell Carcinoma. This strong track record of combination
immunotherapies across the two companies' platforms supports the potential of
the combined assets to transform the future of immunotherapy beyond
checkpoints by synergizing NantKwest's cell-based therapies with ImmunityBio's
immunotherapy platforms.

In a separate press release issued today, ImmunityBio announced that
ImmunityBio's IL-15 fusion protein, Anktiva, with FDA Breakthrough Therapy
status for non-muscle invasive bladder cancer CIS, has achieved primary endpoint
with 72% complete response.

ImmunityBio was founded by Dr. Patrick Soon-Shiong, MD, a physician and
scientist who invented Abraxane for the treatment of metastatic breast cancer,
lung cancer and advanced pancreatic cancer. The companies, including their
operations, are aligned given their long-standing collaboration programs with
opportunity for advancing clinical development of the late stage Phase II and III
trials.

Dr. Soon-Shiong said, "We are developing next-generation immunotherapies to
defeat cancer and infectious disease. By combining ImmunityBio's
immunotherapy platform, which includes the Anktiva IL-15 superagonist, with
NantKwest's natural killer cell platform, the merged entity will have a powerful
and broad product portfolio that can activate both the innate (natural killer cell
and macrophage) and adaptive (T cell) immune systems to create long-term
immunological memory. What distinguishes the merged entity is the late stage

immunotherapy product pipeline that is designed to eliminate the need for high-dose chemotherapy, improve the outcomes of current CAR T cell therapies, and extend beyond checkpoint inhibitors. With 13 clinical trials across multiple tumor types at Phase I to III and with the combined talent in research, clinical development and manufacturing, the merged entity is poised to be a leader in the immunotherapy space."

"We are excited to join forces with ImmunityBio, a company and team we have collaborated with for many years across our platforms," said Rich Adcock, NantKwest Chief Executive Officer. "With the integration of ImmunityBio's pipeline, cutting-edge R&D capabilities, talented employees and clinical expertise, we expect to accelerate the delivery of new treatments for patients with unmet needs. Together we can unlock the combined potential of our assets, and look forward to building on our continued success as one company."

Michael Blaszyk, an independent director of NantKwest and member of the Special Committee stated, "This transaction is a compelling opportunity to drive value creation for shareholders. Our Special Committee carefully evaluated the ImmunityBio proposal and determined it is in the best interests of shareholders and also benefits other stakeholders, including our employees, partners and patients."

ImmunityBio is a leading late stage immunotherapy company activating both the innate (natural killer cell and macrophage) and adaptive (T cell) immune system to treat serious unmet needs within oncology and infectious diseases. Founded in 2014 and headquartered in Culver City, ImmunityBio's platform is designed to overcome limitations of the current standards of T cell-based immunotherapies, including checkpoint inhibitors and CAR-T cells. The company has established a robust next generation immunotherapy clinical pipeline with a strategy toward registrational intent in various indications, beyond checkpoint therapy treatment alone.

**Strategic and Financial Rationale**

Key attributes of the combined company will include:

- **Expansive clinical-stage pipeline and intellectual property portfolio.** 13 assets in clinical trials, including 11 in Phase II to III clinical trials, as well as a strong global intellectual property portfolio of issued and pending worldwide patent applications with patent life extending to 2035 and beyond.

- **Differentiated technology and assets.** Best-in-class combined discovery and development platforms for novel therapies and next-generation early-stage candidates across immunotherapy, neoepitopes and molecules enhancing allogeneic and autologous NK and T-cell therapies.

- **Significant market opportunity.** Well positioned to combine expertise, platforms and resources to address patients across oncology and infectious disease.

- **Cutting-edge cell manufacturing expertise and ready-to-scale facilities.** Extensive and seasoned R&D, clinical trial, and regulatory operations and development teams, which together will occupy over 200,000 square feet of manufacturing and R&D facilities.

- **Improved ability to combine platforms and therapies.** The transaction improves the ability to more seamlessly combine programs and leverage resources and expertise across both companies' platforms, ultimately strengthening the efforts of both companies on behalf of patients to drive better outcomes in the fight against oncology and infectious disease.

- **Significant potential for strategic and financial synergies.** This opportunity will come from meaningful streamlining of clinical operations, therapeutic discovery and development, and manufacturing.

**Transaction Details**

The transaction is structured as a tax-free 100% stock-for-stock merger, with ImmunityBio to reverse merge with NantKwest. Under the terms of the agreement, ImmunityBio shareholders will receive a fixed exchange ratio of 0.8190 shares of NantKwest for each share of ImmunityBio owned. Upon completion of the transaction, on a fully diluted basis, ImmunityBio shareholders will own approximately 72% of the combined company and NantKwest shareholders will own approximately 28% of the combined company, on a fully diluted basis.

A Special Committee of the NantKwest Board of Directors, consisting of independent Directors, undertook a thorough review of the transaction and unanimously recommended that the company proceed with the transaction.

The transaction, which is expected to close in the first half of 2021, is subject to shareholder approval by a majority of unaffiliated shareholders of NantKwest, in addition to other customary closing conditions. There is no filing requirement under the Hart-Scott-Rodino Antitrust Improvements Act for this transaction.

Following the closing of the transaction, the combined company will assume the ImmunityBio name and continue to be listed on the NASDAQ exchange. However, the combined company ticker symbol is expected to be changed to IBRX.

**Leadership**

Richard Adcock will become the CEO of the combined company, and Dr. Soon-Shiong will serve as Executive Chairman of the Board. The combined company will be headquartered at ImmunityBio's offices in Culver City, California.

**Advisors**

Goldman Sachs & Co. LLC and Lazard Frères & Co. LLC are serving as financial advisors to ImmunityBio. Fried, Frank, Harris, Shriver & Jacobson LLP is serving as legal counsel for ImmunityBio.

Barclays is serving as financial advisor to NantKwest's Special Committee. Goodwin Procter LLP acted as legal counsel for NantKwest's Special Committee.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

20.     On February 2, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

21.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

22.     The Proxy Statement contains projections prepared by the Company's and ImmunityBio's management concerning the Proposed Transaction, but fails to provide material information concerning such.

23.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

24.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

25.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBIT; and (ii) EBITDA.

26.     With respect to ImmunityBio's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBIT; and (ii) EBITDA.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

27.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding Barclays' Financial Opinion

28.     The Proxy Statement contains the financial analyses and opinion of Barclays Capital, Inc. ("Barclays") concerning the Proposed Transaction, but fails to provide material information concerning such.

29.     With respect to Barclays' *Discounted Cash Flow Analysis – NantKwest*, the Proxy Statement fails to disclose: (i) the terminal values used in the analysis; (ii) the net operating losses and future losses used in the analysis; and (iii) the inputs and assumptions underlying Barclays' use of the discount rates and perpetuity growth rates used in the analysis.

30.     With respect to Barclays' *Discounted Cash Flow Analysis – ImmunityBio*, the Proxy Statement fails to disclose: (i) the terminal values used in the analysis; (ii) the net operating losses and future losses used in the analysis; (iii) the after-tax impact of regulatory and commercial milestones estimated to be paid by ImmunityBio related to the Aldoxorubicin product; and (iv) the inputs and assumptions underlying Barclays' use of the discount rates and perpetuity growth rates used in the analysis.

31.     With respect to Barclays' *Selected Comparable Company Analysis – NantKwest and ImmunityBio*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

32.     With respect to Barclays' *Equity Analyst Target Prices Analysis*, the Proxy Statement fails to disclose the price targets observed in the analysis, as well as the sources thereof.

33.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

34.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

40.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

41.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

43.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

44.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

46.     The Individual Defendants acted as controlling persons of NantKwest within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of NantKwest, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

49.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated

in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 16, 2021                                    Respectfully submitted,

                                                            By: */s/ Joshua M. Lifshitz*
                                                            Joshua M. Lifshitz
                                                            Email: jml@jlclasslaw.com
                                                            **LIFSHITZ LAW FIRM, P.C.**
                                                            1190 Broadway
                                                            Hewlett, New York 11557
                                                            Telephone: (516) 493-9780
                                                            Facsimile: (516) 280-7376

                                                            *Attorneys for Plaintiff*